4 U.S. 426
 4 Dall. 426
 1 L.Ed. 894
 The United States
v.
James McGill.
 Circuit Court, Pennsylvania District.
 October Term, 1806
 
 1
 THIS was an indictment for the murder of Richard Budden, containing three counts. 1st. Charging the murder to have been committed on the high seas. 2d. Charging it to have been committed in the haven of Cape Francois. 3d. Charging the mortal stroke to have been given on the high seas, and the death to have happened, on shore, at Cape Francois.
 
 
 2
 The indictment was founded on the 8th section of the penal law (1 vol. 102.) which provides 'that if any person, or persons, shall commit upon the high seas, or in any river, haven, bason, or bay, out of the jurisdiction of any particular state, murder, &c. every such offender shall be deemed, taken, and adjudged to be a pirate and felon, and being thereof convicted, shall suffer death.'
 
 
 3
 Upon the evidence it appeared, that the prisoner was mate of the brig Rover, of which Riachard Budden, the deceased, was master; that, on the 3d of May 1806, while the brig lay in the harbour of Cape Francois, the prisoner gave the deceased a mortal stroke, with a piece of wood; that the deceased, languishing with the wound, was taken on shore, alive, the next morning; and that he died the day subsequent to that, on which he was taken on shore.
 
 
 4
 After a defence on the merits, the prisoner's counsel (Ingersoll and Joseph Reed) objected, in point of law, that the death, as well as the mortal blow, were necessary to constitute murder; and that both the death and the blow must happen on the high seas, to give jurisdiction to this Court, under the terms of the act of congress. These positions were elaborately argued; and the following authorities were cited in support of them. 1 Hale, 425, 6. 4 Co. 42. 6. 2 Hale, 188. 3 Hawk. 188. 333. Plowd. 1 Hale, 427. Leach C. L. 723. 4 Bl. C. 303. 2 Co. Rep. 93. 2 Inst. 1 Hawk. 187. East's C. L. 365. 1 Leon. 270. Cro. E. 196. Leach's C. L. 432.
 
 
 5
 The attorney of the district premised, that he was aware of this objection to the jurisdiction; but, as there was no judicial decision upon it, he thought it a duty to bring it before the Court, for an authoritative opinion; and with that view alone, he meant to submit all the ideas which he could suggest, in maintainance of the jurisdiction. He then considered the case, 1st. On the constitution and laws of the United States, which provide for the definition and punishment of felonies and murders on the high seas; Const. art. 1. s. 8. 1 vol. 102. s. 8. which provide for the locality of the commission of the offence, to vest a federal jurisdiction; 1 vol. 101. s. 3. 8. which provide for the place and tribunal of trial; Const. art. 3. s. 2. 1 vol. 67. s. 29. Ib. 102. s. 8. Ib. 53. s. 9. Ib. 55. s. 11. which provide as to the manner of trial; Const. art. 3. s. 2. 1 vol. 67. s. 29. and which provide, generally, that the judicial power of the United States shall extend to all cases of admiralty and maritime jurisdiction. Thus, for every crime, whether of common law, or admiralty, jurisdiction, a common law trial is provided by jury, and a place of venue prescribed; but two things are to be remarked: 1st. That there is no definition of the offence of murder (for instance) with a reference to the common law, any more than to the civil law, which is the law of the admiralty. 2d. That locality, as to the commission of a crime, is no further limited, than as it respects the high seas, or is out of the jurisdiction of any particular state.
 
 
 6
 2d. On the law of England. The case would be within the constable and marshal's jurisdiction, at civil law, if the blow and death were both in a foreign country; or the blow in a foreign country, and the death in England: 13 R. c. 2. 2. 3 Inst. 48. 1 Woodes. 139. 4 Bl. C. 268. If the blow was on sea, and the death on land, neither the common law, nor the admiralty, have jurisdiction; nor is it a case under the statute of 28 H. 8. 'for the murder was not committed on the sea;' but the constable and marshal may try it, by 13 R. 2. Offences committed upon the seas, or in other haven, river or creek, are triable, by jury, in a county to be mentioned in a commission, issued under 27 H. 8. c. 4. 28 H. 8. c. 15. The 33 H. 8. c. 23. provides that 'persons, who have been examined before the king's council upon treasons, murders, &c. may be tried in any shire to be named in a commission,' in whatever shire, or place, within the king's dominions, or without, such offence was committed. The 35 H. 8. c. 2. provides for the trial of treasons, committed out of the realm, by a jury, in the King's Bench, or before commissioners. The 11 & 12 W. 3. provides for the trial of offences in the colonies. The 2 G. 2. c. 21. provides for the trial of a murder where the mortal blow is given on the sea, or out of England, and the death happens in England; or where the blow is given in England, and the death happens abroad. Then, the only statute that provides for the case of the mortal blow and the death both happening abroad, is the 33 H. 8. c. 23., under the modification of a previous examination, &c. before the king's council: and in England the admiral's civil law jurisdiction, in criminal cases, is at an end.
 
 
 7
 3d. On the civil law. The judicial power of the United States, extending to all cases of admiralty and maritime jurisdiction, ex vi termini, embraces criminal, as well as civil, cases; and the civil law, being the law in such cases, it is to be considered, what the civil law defines to be murder, as to the act and the place. The intent, not the event, constitutes the crime. Dig. ad Leg. Corn. l. 14. Dom. 211. The crime is committed, if there be the will to commit it. Ibid. In France, where the criminal law is founded on the civil law, if a man strikes another, with intent to kill him, he is punished with death, though the man is not killed. 1 Denizart. 585. The doctrine of all the cases cited for the prisoner, which requires the stroke and the death to be in the same county, or within the same jurisdiction, is an incident to the common law trial by jury; where the jury of the vicinage are supposed to know the fact of their own knowledge; but it clearly has no application, in cases where the jury does not come at all from the place, where any part of the crime was committed. Cessante ratione, cessat et ipsa lex. The civil law being considered, therefore, as the law of the admiralty, remains under the general delegation of judicial power to the Courts of the United States, unless it is expressly modified by statute. So far as respects the definition of murder, it has not been modified; but the constitution and acts of congress do provide, that all crimes, wherever committed, shall be tried by jury; and that crimes committed on the high seas, shall be tried in the district where the offender is apprehended, or into which he may first be brought. 1 vol. s. 8. p. 102.[1] If, indeed, this reasoning fails, it may be doubted, whether even congress can amend the law, so as to reach cases, like the one under consideration, notwithstanding the power 'to define and punish piracies and felonies committed on the high seas;' Const. art. 1. s. 8. since the crime of murder (adopting the common law definition) must be consummate, in the mortal act and consequence, within the jurisdiction of the United States.
 
 
 8
 PETERS, Justice.
 
 
 9
 It is a general rule with me, to abstain from the exercise of jurisdiction, whenever I doubt my authority to exercise it. On the present occasion, it is not necessary to give an opinion, whether the present is a case of admiralty and maritime jurisdiction, upon the general principles of the admiralty and maritime law; for, confining myself to the 8th section of the penal act, I find sufficient to decide, that, at all events, it is not a case within the jurisdiction of this Court. The Court can only take cognizance of a murder committed on the high seas; and as murder consists in both the stroke and the consequent death, both parts of the crime must happen on the high seas to give jurisdiction; not one part on the high seas, and another part in a foreign country.
 
 
 10
 WASHINGTON, Justice.
 
 
 11
 The point, principally, urged by the prisoner's counsel, is so clear, that it can receive little elucidation from argument. The offence, of which we have cognizance, is murder committed on the high seas. Now, murder is a technical term, of known and settled meaning; and, when used by the legislature, it imports the same, as if they had said, that the Court shall have jurisdiction, in a case of felonious killing upon the high seas. We have no doubt, therefore, that the death, as well as the mortal stroke, must happen on the high seas, to constitute a murder there.
 
 
 12
 But the more important question is, whether the present case, remains unprovided for, by the laws of the United States? The judicial act gives jurisdiction to the Circuit Court, of 'all crimes and offences, cognizable under the authority of the United States.' 1 vol. 55. s. 11. There are, undoubtedly, in my opinion, many crimes and offences against the authority of the United States, which have not been specially defined by law; for, I have often decided, that the federal Courts have a common law jurisdiction in criminal cases: and in order to ascertain the authority of the United States, independent of acts of congress, against which crimes may be committed, we have been properly referred to the constitutional provision, that 'the judicial power shall extend to all cases of admiralty and maritime jurisdiction.' But still the question recurs, is this a case of admiralty and maritime jurisdiction, within the meaning of the constitution? The words of the constitution must be taken to refer to the admiralty and maritime jurisdiction of England (from whose code and practice, we derive our systems of jurisprudence, and, generally speaking, obtain the best glossary) but no case, no authority, has been produced to show, that in England such a prosecution would be sustained (independent of acts of parliament) as a cause of admiralty and maritime jurisdiction. Nor, am I disposed to consider the doctrine of the civil law, which has been mentioned, as furnishing a guide, to escape from the silence of our own code, as well as of the English code, upon the subject.
 
 
 13
 Upon the whole, therefore, I am of opinion, that the present is a case omitted in the law; and that the indictment cannot be sustained. It is some relief to my mind, however, that I have no doubt of the power of congress to provide for such a case. It is true, that it would be inconsistent with common law notions to call it murder; but congress, exercising the constitutional power to define felonies on the high seas, may certainly provide, that a mortal stroke on the high seas, wherever the death may happen, shall be adjudged to be a felony.
 
 
 14
 Upon this charge, the jury immediately acquitted the prisoner.
 
 
 
 [1]
 After the death of capt. Budden, M'Gill had been sent on board the Mediator, an armed vessel, there put in irons, and carried to Baltimore, from which place (without any arrest, or process issuing against him) he voluntarily came to Philadelphia; and surrendered himself for trial to a magistrate. The attorney of the district suggested, that, having been first brought into the district of Maryland, his trial must be there. But, after argument, Judge PETERS, decided, that the provisions of the act were in the alternative; and that M'Gill, being first apprehended in Pennsylvania, might be tried, and ought to be tried, here.